IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOSEPH M. SCHAFFER, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:17-cv-297-RP |
| | § | |
| U.S. BANK TRUST, N.A., *as trustee for LSF9* | § | |
| *Master Participation Trust*; | § | |
| WENDY ALEXANDER; STEVE UTLEY; | § | |
| TOBEY LATHAM; MICHAEL ZEINTZ; | § | |
| and MACKIE, WOLF, ZEINTZ, | § | |
| AND MANN, P.C.; | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are several motions. The first is Plaintiff's Verified Memorandum in Support of Motion to Remand ("Motion to Remand"). (Dkt. 27). The second is Plaintiff's Opposed Motion to Stay Consideration of Defendant U.S. Bank Trust, N.A., Trustee for LSF9 Master Participation Trust's Motion to Dismiss ("Motion to Stay"). (Dkt. 29). The third is Defendant's Motion to Dismiss Amended Original Petition and Brief in Support ("Motion to Dismiss"). (Dkt. 19). Having considered the parties' submissions, the record, and the applicable law, the Court issues the following order.

## I. BACKGROUND

Plaintiff alleges the following facts. Plaintiff bought a piece of property in Hays County, Texas, in January 2007. (Am. Compl., Dkt. 14, ¶ 16). As part of the purchase, Plaintiff executed a deed of trust and note with Bank of America ("BOA"). (*Id.* ¶¶ 16, 22). In November 2014, BOA assigned all of its interest in the deed of trust to LSF9 Mortgage Holdings, LLC. (*Id.* ¶ 24). In March 2015, LSF9 Mortgage Holdings, LLC assigned all of its interest in Plaintiff's deed of trust to

Defendant U.S. Bank Trust, N.A., ("USBTNA") as trustee for LSF9 Master Participation Trust (the "LSF9 Trust"). (*Id.* ¶ 25).

On March 9, 2017, Defendant Mackie Wolf Zeintz & Mann, P.C. ("MWZM") mailed a letter to Plaintiff notifying him that because he failed to cure his default,[1] his loan was being accelerated and his home would be foreclosed if he could not pay the full outstanding balance of the loan. (Notice of Reposting and Sale, Dkt. 14-2, at 32). On April 14, 2017, MWZM posted a notice of foreclosure sale naming Defendants Wendy Alexander, Tobey Latham, or Michael Zeintz[2] as substitute trustees. (Notice of Foreclosure Sale, Dkt. 14-2, at 33).

On April 3, 2017, Plaintiff filed a petition in Hays County District Court alleging a number of claims related to the foreclosure. (State Pet., Dkt. 1-1, at 5). USBTNA removed to this Court several days later. (Not. Rem., Dkt. 1). In July 2017, Plaintiff filed his Amended Complaint, (Dkt.14), in which he alleges a number of claims: (1) Plaintiff received no notice of default from an entity with the right to enforce his note, (2) fraudulent foreclosure, (3) breach of contract, (4) breach of the implied covenant of good faith and fair dealing, (5) violations of the Texas Deceptive Trade Practices Act ("DTPA"), (6) a demand to produce the original promissory note, (7) a request for unspecified injunctive relief, (8) slander of title, and (9) a request for a declaratory judgment to quiet title in his favor. (Dkt. 14, at 15–37). USBTNA moved to dismiss Plaintiff's claims against it, (USBTNA Mot. Dismiss, Dkt. 19); Plaintiff then moved to remand the case to Hays County District Court, (Pl.'s Mot. Remand, Dkt. 27). While USBTNA's motion to dismiss was pending, Plaintiff

---

[1] Plaintiff does not admit that he failed to make his loan payments and in fact offers the affirmative defense of payment. (Dkt. 14, ¶ 27). That said, while Plaintiff "alleges that his Note has in fact been paid," he bases this allegation on the speculation that "third parties, government guarantees, or private insurance such as credit default swaps have paid any sums due on his Note." (*Id.*). Plaintiff offers no support for the proposition that this allegation, even if it were true, would cure Plaintiff's default under the deed of trust.

[2] Defendant Steve Utley had previously been named a substitute trustee in January 2014 by BOA. (Appointment of Substitute Trustee, Dkt. 14-4, at 17). The Court will collectively refer to Defendants Utley, Alexander, Latham, and Zeintz as the "Substitute Trustees."

asked the Court to stay its ruling on the motion until Plaintiff could conduct a limited amount of discovery. (Pl.'s Mot. Stay, Dkt. 29).

Neither MWZM nor the Substitute Trustees have appeared in this case, nor has Plaintiff served them with his Amended Complaint. Moreover, USBTNA's Notice of Removal civil cover sheet indicates that neither MWZM nor the Substitute Trustees were served prior to removal. (Supplement to JS-44 Civil Cover Sheet, Dkt 1-3, at 2). After more than 90 days had elapsed since Plaintiff filed his Amended Complaint, the Court ordered Plaintiff to show cause as to why neither MWZM nor the Substitute Trustees had been served. (Dkt. 35). Instead of doing so, Plaintiff filed a voluntary dismissal signed by USBTNA in which he dismissed his claims against MWZM and the Substitute Trustees without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Dkt. 39).[3] At the time of this order, therefore, the only parties to this action are Plaintiff and USBTNA.

## I. PLAINTIFF'S MOTION TO REMAND

Because Plaintiff's Motion to Remand concerns the Court's subject matter jurisdiction over this action, the Court will first address Plaintiff's Motion to Remand before addressing USBTNA's Motion to Dismiss.

Plaintiff's state court petition and Amended Complaint allege claims only under Texas law, and USBTNA removed on the basis of the Court's diversity jurisdiction. (Dkt. 1, ¶ 5). USBTNA argues that complete diversity exists because Plaintiff is a citizen of Texas and USBTNA is a citizen of Delaware.[4] (*Id.* ¶¶ 6–7; USBTNA Response to Mot. Remand, Dkt. 34, at 4 n.4). Further, USBTNA points out that Plaintiff's state court petition and Amended Complaint each request

---

[3] "Stipulated dismissals under Rule 41(a)(1)(A)(ii), like unilateral dismissals under Rule 41(a)(1)(A)(i), require no judicial action or approval and are effective automatically upon filing." *Yesh Music v. Lakewood Church*, 727 F.3d 356, 362 (5th Cir. 2013).

[4] For diversity jurisdiction purposes, a national bank is a citizen of the state where its main office, as designated in its articles of association, is located. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006). Although USBTNA initially averred that its main office is located in Cincinnati, Ohio, (Dkt. 1, ¶ 7), it later filed with the Court its articles of association, which state that USBTNA's main office is located in Wilmington, Delaware, (USBTNA Response to Mot. Remand, Dkt. 34, at 4 n.4; *see also* USBTNA's Certified Articles of Association, Dkt. 34-1 (listing Wilmington as the location of USBTNA's main office)).

damages of "over $100,000.00 but not more than $2,000,000.00." (*See* Dkt. 14-1, at 39). Accordingly, if this case were only between Plaintiff and USBTNA, the Court would have diversity jurisdiction and remand would be improper. *See* 28 U.S.C. § 1332(a); *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 250 (5th Cir. 2011) ("When the district court has original subject matter jurisdiction over state law claims, the exercise of that jurisdiction is mandatory.").

Plaintiff nonetheless argues that this case should be remanded for two reasons: (1) because USBTNA's citizenship should be determined by the citizenship of the LSF9 Trust's certificateholders, which USBTNA has failed to establish; and (2) because the Substitute Trustees and MZWM are Texas residents. (Dkt. 27; Dkt. 14, ¶ 14). USBTNA responds that only its citizenship matters and that MWZM and the Substitute Trustees were improperly joined. (Dkt. 34, ¶ 1 n.2; Dkt. 1, ¶¶ 8–23). For the reasons discussed below, the Court holds that remand is inappropriate.

## A.  USBTNA's Citizenship

Plaintiff sued USBTNA in its capacity as trustee for the LSF9 Trust. For the purposes of establishing diversity jurisdiction, "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). In *Navarro*, the U.S. Supreme Court stated that "a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 464. On the other hand, an unincorporated legal entity such as a trust "possesse[s] the citizenship of its members." *Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016). As the Fifth Circuit recently explained, *Navarro*'s rule "coexists" with *Americold*'s, and that "if the trustee . . . is sued in the trustee's own name, then *Navarro*'s rule controls." *Bynane v. Bank of N.Y. Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 358 (5th Cir. 2017).

Plaintiff's position is that USBTNA is "not an active trustee whose control of the assets held in [its name] is real and substantial," and thus that USBTNA is not a real party to the controversy. (Dkt. 27, ¶ 12). To support his position, Plaintiff makes two arguments. The first is that USBTNA has not provided evidence that it has sufficient control over the LSF9 Trust to be a real party to the controversy. (*Id.* ¶ 8.I ("USBTNA has failed to produce the trust agreement that showed it had any active control over the trust.")). The second is that USBTNA actually has "no authority or responsibility over the loans in the Trust," and that the true authority lies with the mortgage servicer, Caliber Home Loans, Inc. ("Caliber"). (*Id.* ¶ 10.B.c).

Plaintiff's first argument is based on two cases from New York federal district courts that Plaintiff contends are significant for the present case: *U.S. Bank Tr., N.A. v. Monroe*, No. 115CV1480LEKDJS, 2017 WL 923326, at *1 (N.D.N.Y. Mar. 8, 2017) and *U.S. Bank Tr., N.A. v. Dupre*, No. 615CV0558LEKTWD, 2016 WL 5107123, at *1 (N.D.N.Y. Sept. 20, 2016). (Id. ¶¶ 7–9). In *Monroe*, USBTNA (there as plaintiff) failed to provide its articles of incorporation to establish its citizenship or allege anything concerning "the type of trust at issue [or] its degree of control over the trust assets." 2017 WL 923326, at *3–5. In *Dupre*, the court noted the same deficiency with USBTNA's trust agreement—it was "almost completely redacted," showing only a portion of text "stat[ing] that U.S. Bank shall have only such rights, powers and duties as are specifically and expressly required by this Agreement." 2016 WL 5107123, at *3–4 (quotation marks omitted). In both cases, the court dismissed USBTNA's complaint because USBTNA provided insufficient information for the court to determine if it had subject matter jurisdiction. *Monroe*, 2017 WL 923326, at *5; *Dupre*, 2016 WL 5107123, at *4.

Contrary to Plaintiff's urging, neither case informs the disposition of this case. Even if the Court were to find those cases persuasive, the facts here are critically different. Unlike *Monroe*, USBTNA in this case has provided its articles of association to establish its own citizenship.

(USBTNA's Certified Articles of Association, Dkt. 34-1). Unlike both *Monroe* and *Dupre*, USBTNA has provided the Court with a complete and unredacted copy of the trust agreement. (*See* Dkt. 43 (requesting *in camera* review); Dkt. 44 (agreeing to conduct *in camera* review)).

More importantly, neither *Monroe* nor *Dupre* controls this Court's analysis. Instead, the Court looks to the Fifth Circuit, which has recently issued guidance about how to analyze diversity jurisdiction in cases such as this. *See Bynane*, 866 F.3d at 355–59. In *Bynane*, the Fifth Circuit made it clear that "if the trustee . . . is sued in the trustee's own name, then *Navarro*'s rule controls." *Id.* at 358. There, because the defendant bank "was sued in its capacity as trustee," the court held that "*Navarro* controls, and the only remaining question" was whether the defendant bank had "real and substantial control under *Navarro*'s test. *Id.* at 357. Here, the Court agrees with USBTNA that, because Plaintiff sued USBTNA as trustee, the only remaining question is whether USBTNA is a "real part[y] to the controversy" under *Navarro*'s test. *Navarro*, 446 U.S. at 465.

This brings the Court to Plaintiff's second argument—that Caliber, not USBTNA, is the real party to the controversy. Plaintiff bases this argument on a May 2015 email from USBTNA to Plaintiff. (Dkt. 27, ¶¶ 10–11). In that email, an employee in USBTNA's Mortgage Research division told Plaintiff that USBTNA is "merely the trustee" and has "no involvement with the foreclosure process." (May 2015 Email, Dkt. 27-6, at 2). USBTNA states that it "has no authority or responsibility to review and[/]or approve or disapprove" of the servicer's foreclosure action. (*Id.*). USBTNA then directs Plaintiff to contact Caliber with any questions about the foreclosure. (*Id.*). From this email, Plaintiff concludes that "the ROLE of the Trustee is being performed by the alleged servicer without any information, input, or feedback" from USBTNA, and that USBTNA is therefore not "a real party to the controversy." (Dkt. 27, ¶¶ 10.B.c).

Defendant responds that the email is irrelevant to the Fifth Circuit's analysis in these sorts of cases. (Dkt. 34, ¶ 8). The Court agrees that the degree to which USBTNA has delegated foreclosure decisions to the mortgage servicer is irrelevant to the jurisdictional analysis here.

Instead of looking at the decisions a trustee delegates to a mortgage servicer, the Fifth Circuit focuses its *Navarro* analysis on the powers and limitations that the trust agreement vests in the trustee and the trust's beneficiaries. *See Bynane*, 866 F.3d at 357. In *Bynane*, the Fifth Circuit determined that the trustee was the real party in interest because the pooling and service agreement transferred "all right, title, and interest" in the pooled mortgage loans to the trustee. *Id.* The Fifth Circuit also considered the fact that "the certificateholders ha[d] only limited rights to vote or otherwise control the operation of the trust." *Id.* In another post-*Americold* case, the Fifth Circuit similarly focused on the powers and limitations of the trustee and the trust beneficiaries. *See Justice v. Wells Fargo Bank Nat'l Ass'n*, 674 F. App'x 330, 332 (5th Cir. 2016), *as revised* (Mar. 22, 2017) (holding that the trustee was the real party in interest because it held "all the right, title and interest" in the trust). Moreover, district courts in this circuit have looked to the pleadings and to the trust agreement to determine subject matter jurisdiction under *Navarro* and *Americold*. *See Lewis v. Deutsche Bank Nat'l Tr. Co.*, No. 3:16-CV-133, 2017 WL 1354098, at *4 (S.D. Tex. Apr. 13, 2017) (holding that trustee was the real party to the controversy where plaintiff sued the trustee and where the trust agreement gave the trustee full title to the trust assets and the power to sue and be sued); *Rodriguez v. Deutsche Bank Nat'l Tr. Co.*, No. CV H-16-1597, 2017 WL 371141, at *2 (S.D. Tex. Jan. 26, 2017) (holding that the trustee was the real party to the controversy where the trustee had legal title and investment control and certificateholders had limited veto power).

Here, using the jurisdictional analysis under *Navarro* and *Bynane*, there are factors both for and against each party's position. On one hand, the LSF9 Trust Agreement grants significant powers to USBTNA as trustee. Among other things, the agreement gives USBTNA the "power and

authority to conduct the business of the [trust], make and execute contracts and other instruments on behalf of the [trust], and sue and be sued on behalf of the [trust]." (LSF9 Trust Agreement, Dkt. 34-2, § 2.01).[5] USBTNA is empowered to execute certificates, receive and dispose of loans, assign or convey trust assets, and manage and distribute trust income. (*Id.* § 2.03). On the other hand, legal title is vested in the trust, not in USBTNA as trustee. (*Id.* § 2.08). Additionally, an ownership-interest majority of certificateholders may take "any action or direction" in writing, which the trustee must then implement (subject to certain limitations).[6] (*Id.* §§ 4.03, 6.03).

All things considered, the Court finds that USBTNA is a real party to the controversy such that its citizenship determines diversity jurisdiction under *Navarro*. Although USBTNA lacks legal title—unlike the *Navarro* trustees—USBTNA both "manage[s] the assets [and] control[s] the litigation" like the *Navarro* trustees. *Navarro*, 446 U.S. at 465. USBTNA has broad management powers that can be overcome by a certificateholders only in circumscribed instances. And, significantly, Plaintiff sued USBTNA in its capacity as trustee. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. at 1016 ("[W]hen a trustee . . . is sued in her own name, her citizenship is all that matters for diversity purposes."). The Court is thus satisfied that USBTNA possesses sufficiently "real and substantial" control that it is a real party to the controversy. *Navarro*, 446 U.S. at 465. Accordingly, Plaintiff is diverse from USBTNA. The Court therefore has subject matter over this action because Plaintiff and USBTNA are the only two parties to this action, as clarified in the next section.

---

[5] Although the Court reviewed a complete and unredacted version of the LSF9 Trust Agreement, this and the other provisions described in the Court's order were disclosed previously by USBTNA in the redacted copy filed as an exhibit to its response to Plaintiff's motion to remand. (*See* Dkt. 34-2).

[6] The Court takes note, however, of USBTNA's argument that the trust agreement places various limitations on certificateholder action, such as permitting the trustee to ignore a certificateholder instruction if the trustee determines that the instruction is contrary to the terms of the trust agreement. (*See* Dkt. 34-2, § 6.03).

Plaintiff's second argument for remand[7] is that the Court lacks subject matter over this action because the Substitute Trustees and MZWM are Texas residents. (Dkt. 14, ¶ 14). USBTNA responds that the Court has subject matter jurisdiction because the Substitute Trustees and MZWM were improperly joined. (Dkt. 34, ¶ 1 n.2; Dkt. 1, ¶¶ 8–23). As it happens, subsequent developments have rendered the parties' disagreement on this point moot.

Plaintiff filed his state-court petition on April 3, 2017, (Dkt. 1-1, at 5), USBTNA removed to this Court on April 6, (Dkt. 1), and Plaintiff filed his Amended Complaint on July 26, 2017, (Dkt.14). Plaintiff never served the Substitute Trustees or MWZM with either his state-court petition or his federal complaint, and the Court eventually ordered Plaintiff to show cause as to why he had neglected to timely serve those parties. (Dkt. 35). Rather than respond to the Court's order, Plaintiff filed a voluntary dismissal signed by USBTNA in which he dismissed his claims against the Substitute Trustees and MWMZ without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Dkt. 39). Accordingly, neither MWMZ nor the Substitute Trustees are currently parties to this action,[8] leaving only Plaintiff (a Texas resident) and USBTNA (a Delaware resident). Thus, the Court currently has subject matter jurisdiction over this action. And because the Court

---

[7] Plaintiff does not raise this argument in his motion to remand, but because Plaintiff raised the issue in his amended complaint and because it implicates the Court's subject matter jurisdiction, the Court will address it here.

[8] Because Plaintiff dismissed its claims against the in-state defendants, the Court needs not consider whether they were improperly joined at the time USBTNA filed its notice of removal. Although "the jurisdiction of the court depends upon the state of things at the time of the action brought," this time-of-filing rule pertains to "the state of facts that existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp.*, L.P., 541 U.S. 567, 570–71 (2004). By contrast, an "established exception" to the time-of-filing rule is "the dismissal of the party that had destroyed diversity." *Id.* at 572–73. For example, the Supreme Court has upheld a district court's judgment where complete diversity existed at trial—after the diversity-destroying defendant settled and was dismissed—but not at removal. *Id.* at 573 (discussing *Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996)). The Court reaffirmed *Caterpillar*'s holding that "a statutory defect—'[a defendant's] failure to meet the [28 U.S.C.] § 1441(a) requirement that the case be fit for federal adjudication at the time the removal petition is filed'—did not require dismissal once there was no longer any jurisdictional defect." *Id.* at 574 (quoting *Caterpillar*, 519 U.S. at 73).

Thus, even assuming *arguendo* that the Substitute Trustees and MWZM are both (a) Texas residents and (b) not improperly joined, the *Caterpillar* exception operates here to supply the Court with subject matter jurisdiction. That is, even if complete diversity did not exist when USBTNA removed this case, Plaintiff's voluntary dismissal of every other defendant—following its own neglect to timely serve those defendants—has cured any jurisdictional defect that may or may not have existed at removal.

now has subject matter jurisdiction over this case, "the exercise over that jurisdiction is mandatory" and remand is improper. *Cuevas*, 648 F.3d at 250.

## II. PLAINTIFF'S MOTION TO STAY

Plaintiff asks the Court to stay its consideration of USBTNA's motion to dismiss while he conducts limited discovery. (Dkts. 29, 31). Specifically, Plaintiff asks that the defendant produce the following documents before the Court rules on the motion to dismiss: (1) the LSF9 Trust agreement, (2) "any power of attorney or limited power of attorney that the defendant has executed affecting the enforcement of the power sale [sic] clause in the Plaintiff's deed of trust," and (3) the "Loan Participation Agreement that describes the defendant's role as the participating/participation agent." (Dkt. 31, ¶ 8). USBTNA responds that not only is Plaintiff's limited discovery irrelevant, but that the Court should in fact stay discovery altogether while until it decides USBTNA's motion to dismiss. (Dkt. 42). The Court agrees with USBTNA that Plaintiff's motion is properly denied.

Plaintiff's motion to stay is without merit. His need for the trust agreement is based on two layers of speculation. First, Plaintiff speculates that the redacted trust agreement in *Dupre*, 2016 WL 5107123, established that the trustee lacked "the authority to exercise the non-judicial power of sale to enforce a note or under a deed of trust." (Dkt. 31, ¶ 10.a) ("If that Trust Agreement had such authority in the *Dupre* case, then the document would not have been redacted."). Based on his theory of the *Dupre* trust agreement, Plaintiff then further guesses "that the trust involved in this case [and the *Dupre* trust] have identical terms." (*Id.*). Plaintiff's theory is an insufficient basis on which to stay the Court's decision on USBTNA's motion to dismiss, especially when USBTNA has provided the Court with an unredacted copy of the LSF9 Trust agreement (and thereby resolving the deficiency at issue in *Dupre*).

Plaintiff's request that the Court delay its ruling until he can review a power of attorney or loan participation agreement is also without merit. As explained more fully below, neither document

is relevant to the merits of Plaintiff's claims. Neither Plaintiff nor the Court needs to review either document to decide whether Plaintiff has stated a claim for which relief can be granted under Rule 12(b)(6). Accordingly, Plaintiff's motion to stay is denied.

The Court has subject matter jurisdiction and does not find good cause to stay its decision of USBTNA's motion to dismiss. It will decide that motion now. As it will become clear below, USBTNA's request to stay discovery is moot.

### III. USBTNA'S MOTION TO DISMISS

*A. Standard of Review*

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and citation omitted).

The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

551 U.S. 308, 322 (2007). A court may also consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)) (holding that while the court generally must not go outside the pleadings, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim'"). Finally, a court may also take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

### B. Affirmative Defense of Payment

Plaintiff "pleads the affirmative defense of payment," in which he alleges that "his Note has in fact been paid" by "third parties, government guarantees, or private insurance such as credit default swaps." (Dkt. 14, ¶ 27). USBTNA points out that Plaintiff's allegation does not constitute a cause of action. (Dkt. 19, at 20 n.11). The Court agrees. Plaintiff has cited no authority for the proposition that his speculative claim about third-party payment, even if it were true, would entitle him to any relief. Accordingly, even if the Court were to construe Plaintiff's "affirmative defense of payment" as a claim for relief, it would dismiss that cause of action for failure to state a claim upon which relief can be granted.

### C. No Notice of Default from the Holder of the Note

Plaintiff states that he "has not received notice of default from any entity showing that it has the right to enforce [P]laintiff's note as provided for in [Texas Business & Commerce Code § 3.308(b)]." (Dkt. 14, ¶ 28). Plaintiff also claims that he "has not received from the entity holding the note with the right to enforce that there . . . is an unsatisfied obligation secured by [P]laintiff's

deed of trust." (*Id.* (citing Tex. Bus. & Com. Code § 3.301)). Plaintiff insists that, despite his demands to produce the note, this is not simply another one of the "show-me-the-note" cases that have been "roundly rejected." (Pl.'s Resp. Mot. Dismiss, Dkt. 28, ¶ 10); *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 253 (5th Cir. 2013) (rejecting the "theory . . . that only the holder of the original wet-ink signature note has the lawful power to initiate a non-judicial foreclosure. . . because foreclosure statutes simply do not require possession or production of the original note."). In an attempt to distinguish his claim, Plaintiff says that his complaint alleges that "if there is a default in the payment of the note, the person entitled to payment may enforce the note with the power of sale . . . [subject to] certain obligations under the [Uniform Commercial Code]." (Dkt. 28, ¶ 10). USBTNA replies that "there is not a distinction with a difference" between Plaintiff's demand that the note be produced and the "roundly rejected show-me-the-note theory." (USBTNA Reply Mot. Dismiss, Dkt. 33, ¶ 4). The Court agrees with USBTNA.

The fundamental premise of courts' rejection of the show-me-the-note theory is that a deed of trust may be enforced independent of the note. *See Morlock, L.L.C. v. Bank of New York*, 448 S.W.3d 514, 518 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (confirming "the principle that the note and deed of trust are severable and the fact that the provisions of the Texas Property Code governing nonjudicial foreclosure do not require possession or production of the original note"). As a result, whatever regulations the Texas Business and Commerce Code place on the holder of a note are irrelevant; all that matters is that the foreclosing party can establish its ownership of the deed of trust. *See id.* at 519 ("Since the Bank proved that it is the owner of the deed of trust, it established its interest in the property and right to foreclose as a matter of law regardless of whether it was also a holder or the owner of the note.").

Here, Plaintiff attached to his complaint the assignments of his deed of trust from (1) BOA to LSF9 Mortgage Holdings, LLC and (2) LSF9 Mortgage Holdings, LLC to USBTNA as trustee for

the LSF9 Trust. (Assignments, Dkt. 14-4 (exhibits J and K)). "A mortgage can be foreclosed upon by either the mortgage servicer or the mortgagee." *Sigler v. Caliber Home Loans, Inc.*, No. SA-16-CV-717-XR, 2017 WL 74756, at *4 (W.D. Tex. Jan. 5, 2017) (citing Tex. Prop. Code §§ 51.002, 51.0025). A mortgagee is "the grantee, beneficiary, owner, or holder of a security instrument." Tex. Prop. Code § 51.0001(4)(a). If a deed of trust has been assigned, the Texas Property Code defines a mortgagee as "the last person to whom the security interest has been assigned of record." *Id.* § 51.0001(4)(C). The deed of trust is a security interest; if the assignments are valid, then USBTNA (in its capacity as trustee for the LSF9 Trust) is a mortgagee with the authority to foreclose Plaintiff's property under the Texas Property Code. *See Martins*, 722 F.3d at 255 ("[T]he Texas Property Code contemplates and permits [a mortgagee to] either (1) to grant the mortgage servicer the authority to foreclose or, if [the mortgagee] is its own mortgage servicer, (2) to bring the foreclosure action itself.").

Plaintiff disputes the validity of the second assignment, alleging that Caliber forged the assignment because it lacked the authority to execute the assignment on behalf of LSF9 Mortgage Holdings, LLC. (Dkt. 14-1, ¶¶ 39–40; Dkt. 28 ¶ 8). Plaintiff argues that because a forged assignment is void, he has standing to challenge the validity of the assignment. (*Id.*). USBTNA responds that Plaintiff's allegation establishes at most that the assignment is voidable. (Dkt. 19, at 5 n.5). Again, the Court agrees with USBTNA.

"As a general rule, a non-party to a contract cannot enforce the contract unless she is an intended third-party beneficiary." *Vazquez v. Deutsche Bank Nat. Tr. Co.*, 441 S.W.3d 783, 787 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (quotation marks and citation omitted). "However, that rule does not apply when a party, rather than seeking to enforce the contract, instead alleges that the contract was void from the outset." *Id.* Thus, a non-party to a contract who is not an intended third-party beneficiary has standing to contest a contract on the grounds that it is void, but not on the

grounds that it is merely voidable. *See Reinagel v. Deutsche Bank Nat. Tr. Co.*, 735 F.3d 220, 226 (5th Cir. 2013) ("[Texas] law is settled that the obligors of a claim . . . may not defend [against an assignee's effort to enforce the obligation] on any ground which renders the assignment voidable only.") (quoting *Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.— Houston [1st Dist.] 1975, no writ).

A forged deed is void, *Vazquez*, 441 S.W.3d at 787, and a plaintiff who properly alleges that an assignment was forged has standing to contest the assignment. *See EverBank, N.A. v. Seedergy Ventures, Inc.*, 499 S.W.3d 534, 542 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Standing would exist, for instance, if a homeowner alleged that an assignment was forged, because a forged deed is void."). However, the Fifth Circuit has held that a plaintiff in a foreclosure case lacks standing to contest the validity of an assignment between third parties when the plaintiff alleges that the signatory merely lacked authority. *Reinagel*, 735 F.3d at 226. Here, that is all Plaintiff alleges.

Plaintiff's forgery allegation is based on the fact that "there is no Power of Attorney authorizing [Caliber] to act for LSF9 Mortgage Holdings, LLC recorded in the Real Property Records of Hays County, Texas." (Dkt. 14-1, ¶ 39). On that basis, Plaintiff asserts that "[w]ithout these powers of attorney, then the assignment and/or the actions of [Caliber] in its attempt to foreclose on plaintiff's [property] would be based on forged documents." (*Id.*). Plaintiff's allegation, however, misconstrues the concept of forgery.

"[O]ne who signs his true name, purporting to act as the agent of another, has not committed a forgery." *Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976). Following this rule, this Court has in other cases held that a plaintiff does not allege forgery by alleging that the signatory lacked authority but nonetheless signed his or her own name. *See Tyler v. Bank of Am., N.A.*, No. SA-12-CV-00909-DAE, 2013 WL 1821754, at *6 (W.D. Tex. Apr. 29, 2013) (holding that the plaintiffs "fail[ed] to plausibly allege that the assignment of the Deed of Trust was forged" because they "d[id]

not allege that the power of attorney was forged; they merely assert[ed] that signing the document without proper authority would constitute a forgery").

Here, Plaintiff alleges simply that Caliber lacked the authority to sign the second assignment of Plaintiff's deed of trust to USBTNA in its capacity as trustee for the LSF9 Trust. Plaintiff nowhere alleges that Caliber's signatory failed to sign his or her true name. Accordingly, Plaintiff has merely alleged facts that render the deed of trust voidable, which is insufficient to confer upon Plaintiff the standing to challenge the assignment. *See Allen v. Bank of America, N.A.*, No. EP-14-CV-429-KC, 2015 WL 1726986, at *8 (W.D. Tex. Apr. 15, 2015) ("Like in *Reinagel*, Plaintiff cannot challenge a facially valid assignment on the basis that the individual who assigned the mortgage to [the defendant bank] lacked actual authority to execute the transaction.").[9] Without standing to challenge the assignment, Plaintiff has no basis by which to contest USBTNA's status as mortgagee. Because USBTNA's status as mortgagee gives it authority to foreclose under the deed of trust, Plaintiff's note-based cause of action fails to state a claim upon which relief can be granted.[10]

### D. Fraudulent Foreclosure

Plaintiff asserts a cause of action that he characterizes as a "fraudulent foreclosure" claim. As part of this claim, Plaintiff complains that: (a) "LSF9 is not the Lender" and therefore "does not have the right to declare a foreclosure," (Dkt. 14, ¶ 30); (b) the LSF9 Trust is a participating lender that lacks an ownership interest in Plaintiff's property, (*id.* ¶ 32); (c) the notice of sale was deficient,

---

[9] Plaintiff's claim that he is "entitled to have the power of attorney produced," (Dkt. 14-1, ¶ 39), likewise lacks merit. Plaintiff bases his argument for entitlement on the proposition that "[t]he party alleging agency has the burden to prove its existence." (*Id.* ¶ 40). Plaintiff's argument is beside the point. The question here is whether Plaintiff even has the standing to contest the second assignment. Plaintiff's standing (or lack thereof) is based entirely on his own allegations, not on what another party asserts. Here, Plaintiff lacks standing because he failed to allege facts that could establish that the assignment is void, rather than voidable.

[10] Later in his amended complaint, Plaintiff "demand[s] that all defendant show to represent [sic] the holder of the plaintiff's note and that the entity that each defendant represents is the holder of plaintiff's note with the right to enforce the note as provided in under [sic] Texas Business and Commerce Code §] 3.308(b)." (Dkt. 14-1, ¶ 58). Plaintiff also "makes demands on the defendants to exhibit the Note" under Texas Business and Commerce Code § 3.501(2)(b)(2)(A) and (B). (Id. ¶ 66). Nothing in either statute requires production of the note in this case. As discussed in this section, the note is irrelevant to USBTNA's authority to foreclose on Plaintiff's property. Plaintiff's subsequent note demands fail for the same reasons as the first.

(id. ¶¶ 33–37); and (d) the assignment of Plaintiff's deed of trust to USBTNA in its capacity as trustee for the LSF9 Trust was void, (*id.* ¶¶ 39–40).

Plaintiff cites no authority for "fraudulent foreclosure" as a cause of action, nor does he cite any law under which he might be entitled to relief. To the extent that Plaintiff's claim might be construed as a claim for wrongful foreclosure—which is a recognized cause of action under Texas law—Plaintiff fails to state a claim for which relief can be granted because no party has yet foreclosed on Plaintiff's property. *See Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d 403, 406 (5th Cir. 2017) ("A claim of wrongful foreclosure cannot succeed, however, when no foreclosure has occurred.").

### E. Breach of Contract

Plaintiff also asserts a cause of action for breach of contract. (Dkt. 14-1, ¶¶ 41–44). Plaintiff asserts that because "there is nothing in the record to show that the alleged holder of the note and deed of trust has authorized anyone to enforce the Note using the non-judicial power of sale," and that USBTNA's failure to appoint a substitute trustee "constitutes a breach of the Deed of Trust." (*Id.* ¶ 42).

"In Texas, performance or tendered performance by the plaintiff is an essential element of a breach of contract claim." *Golden v. Wells Fargo Bank, N.A.*, 557 F. App'x 323, 327 (5th Cir. 2014). Moreover, "a party to a contract who is himself in default cannot maintain a suit for its breach." *Id.* at 327–28 (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)). Plaintiff's "affirmative defense of payment," (Dkt. 14, ¶ 27), which is predicated not on Plaintiff's own payments but on speculations about government guarantees and credit default swaps, is a tacit admission that he has defaulted on his obligations under the deed of trust. Plaintiff also asks the Court to "take judicial notice of the fact that at the time of [the March 2015 assignment], plaintiff's note was non-performing." (Dkt. 14-1, ¶ 59). Finally, Plaintiff does not dispute Defendant's claim that he was not

performing his obligations under the deed of trust. (*See* Dkt. 19, ¶ 19). Without deciding whether other grounds may exist to dismiss Plaintiff's breach-of-contract claim, it is sufficient to find that Plaintiff has defaulted on his own obligations under the deed of trust to hold that he fails to state a breach of contract claim. *See Golden*, 557 F. App'x at 328 (holding that because the plaintiffs' "breach of contract claim [was] premised upon their own prior default," it "was properly dismissed under Texas law").

### F. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that "even if the Note and Deed of Trust were validly and properly assigned to defendant USBTNA, USBTNA did not act in good faith and did not deal fairly with Plaintiff" because USBTNA "attempt[ed] to foreclose on [Plaintiff's property] even though [it] did not have standing to do so." (Dkt. 14-1, ¶ 47). According to Plaintiff, USBTNA's unauthorized foreclosure constituted "a bad faith breach of contract." (*Id.*).

Although Plaintiff's allegations are controverted by the documents attached to his amended complaint, Plaintiff's good-faith-and-fair-dealing claim fails as a matter of law on its own terms. "Under Texas law, there is 'no special relationship between a mortgagor and mortgagee' that would give rise to a stand-alone duty of good faith and fair dealing." *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 329 (5th Cir. 2013) (quoting *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App.—Corpus Christi 2005, pet. denied)). Some federal district courts in this circuit have stated that "evidence of active participation on the part of the mortgagor . . . might . . . give rise to a duty of good faith and fair dealing." *Levels v. Merlino*, 969 F. Supp. 2d 704, 718 (N.D. Tex. 2013) (citing *Omrazeti v. Aurora Bank FSB*, No. 12-CV-00730-DAE, 2013 WL 3242520, at *14 (W.D. Tex. June 25, 2013), which found "active participation" where a defendant "went beyond its conventional role as a loan servicer by offering [the p]laintiff a loan modification"). Plaintiff's good-faith-and-fair-dealing claim contains no evidence of the kind of active participation by any party that

might alter the normal duties that attend the mortgagor-mortgagee relationship. Instead, Plaintiff's good-faith-and-fair-dealing claim is predicated entirely on the allegations about USBTNA's lack of authority to foreclose. Accordingly, Plaintiff fails to state a claim for breach of the covenant of good faith and fair dealing.

### G. Texas Deceptive Trade Practices Act

Plaintiff's cause of action under the Texas Deceptive Trade Practices Act ("DTPA") is based on the actions of the Substitute Trustees and MWZM. (Dkt. 14-1, ¶¶ 51–56). Accordingly, Plaintiff fails to state a DTPA claim against USBTNA.

### H. Slander of Title

Plaintiff also brings a claim for slander of title. (Dkt. 14-1, ¶¶ 73–81). The basis for Plaintiff's claim is his allegation that the March 2015 assignment from LSF9 Mortgage Holdings, LLC to USBTNA as trustee for the LSF9 Trust, which was recorded, "is a communication to a third party of a false statement derogatory to Plaintiff's title made with malice causing special damages to Plaintiff." (*Id.* ¶ 75). USBTNA objects that Plaintiff's pleading is insufficient in several ways and that the statute of limitations bars Plaintiff's slander of title claim. (Dkt. 19, ¶¶ 22–25). The Court agrees with USBTNA that Plaintiff's slander of title claim must be dismissed.

Among other things, a plaintiff is "required to prove the loss of a specific sale or sales in order to recover on [the plaintiff's] slander of title action." *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983); *see also Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 116 (Tex. App.—El Paso 1997, pet. denied) ("[A] claim for slander of title does not accrue until there has been a loss of a specific sale."). Because Plaintiff has not pleaded the loss of a specific sale, he fails to state a slander of title claim.

### I. Quiet Title

Buried in his slander of title claim, Plaintiff asks the Court to quiet title by declaring that the property at issue in this case "is vested in Plaintiff" and that no defendant has any interest in the

property. (Dkt. 14-1, ¶ 78). USBTNA responds that Plaintiff's quiet title theory fails as a matter of law because it is not premised on the strength of Plaintiff's own title. (Dkt. 19, ¶¶ 26–27). The Court agrees with USBTNA.

"A suit to quiet title is an equitable action . . . [and a] plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.—Corpus Christi 2001, no pet.). "[A] plaintiff asserting a quiet title claim has the burden of establishing his superior right to the property." *Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 883 (5th Cir. 2016) (citing *Fricks*, 45 S.W.3d at 327). The Fifth Circuit has repeatedly held that challenges to the validity of an assignment of a deed of trust are not a sufficient basis for a quiet title action under Texas law. *Mason*, 671 F. App'x at 883; *Warren v. Bank of Am., N.A.*, 566 F. App'x 379, 383 (5th Cir. 2014); *Morlock, L.L.C. v. JP Morgan Chase Bank*, N.A., 586 F. App'x 631, 633 (5th Cir. 2013). The Fifth Circuit has similarly rejected—as a matter of law—quiet title actions premised on the theory that a defendant "is not the present owner of the note" and therefore lacks "the right to sell the property at a foreclosure sale." *Warren*, 566 F. App'x at 381, 383.

Here, Plaintiff's quiet title is based not on the strength of his own title but on allegations about ownership of the note and the validity of the assignments of Plaintiff's deed of trust. As the Fifth Circuit has explained, these allegations are insufficient to state a quiet title claim under Texas law.

### J. Requests for Declaratory and Injunctive Relief

Finally, Plaintiff seeks declaratory and injunctive relief. (Dkt.14-1, ¶¶ 82–88 (seeking a declaration that no defendant has the authority to foreclose on Plaintiff's property); *id.* ¶¶ 67–72 (asking the court to enjoin any defendant from foreclosing on Plaintiff's property)). Plaintiff seeks declaratory relief under the Texas Declaratory Judgment Act. (*Id.* ¶ 83). "When a declaratory judgment action is filed in state court and is later removed to federal court, it is converted to an

action brought under the federal Declaratory Judgment Act." *Anderson v. Wells Fargo Home Mortg.*, No. 5:16-CV-433-DAE, 2016 WL 4197606, at *4 (W.D. Tex. Aug. 8, 2016) (quotation marks and citation omitted). Because the federal Declaratory Judgment Act is a procedural mechanism, it requires "a substantial and continuing controversy between two adverse parties." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003)). Therefore, because this Court has dismissed all of Plaintiff's claims, his declaratory judgment claim must also be dismissed.

Similarly, "[u]nder Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action." *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011); *see also Massey v. EMC Mortg. Corp.*, 546 Fed. App'x. 477, 483 (5th Cir. 2013) ("Because the [plaintiffs'] request for injunctive relief depends on the success of their other claims, we find that it was properly dismissed."). Because the Court dismisses all of Plaintiff's underlying causes of action, Plaintiff cannot receive injunctive relief. Plaintiff's claims for declaratory and injunctive relief are therefore denied.

### K. Dismissal With Prejudice

Because the Court holds that Plaintiff, in his Amended Complaint, has failed to state a claim for every cause of action in his complaint, this case is dismissed. Furthermore, the Court dismisses the case with prejudice and without leave to amend. Although Federal Rule of Civil Procedure 15(a)(2) permits a court to grant leave to amend pleadings and "evinces a bias in favor of granting leave to amend, it is not automatic." *Matter of Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (internal quotation marks and citation omitted). Among other things, "a party must 'expressly request' leave to amend." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 796 (5th Cir. 2014) (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003)). Even though "[a] formal motion is not always required," the requesting party must still "set forth with particularity the grounds for the amendment and the relief sought." *Willard*, 336 F.3d at

387. When a plaintiff fails to request leave to amend or indicate what might be added to the complaint if amendment were allowed, a district court may dismiss the cause of action with prejudice. *See Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 178 (5th Cir. 2012). Here, because Plaintiff has neither requested leave to amend his complaint nor indicated in what he might add to a second amended complaint, the Court declines to *sua sponte* permit Plaintiff to amend his complaint a second time.

## IV. CONCLUSION

For these reasons, Plaintiff's Verified Memorandum in Support of Motion to Remand ("Motion to Remand"), (Dkt. 27), is **DENIED**. Plaintiff's Opposed Motion to Stay Consideration of Defendant U.S. Bank Trust, N.A., Trustee for LSF9 Master Participation Trust's Motion to Dismiss, (Dkt. 29), is **DENIED**. Defendant's Motion to Dismiss Amended Original Petition and Brief in Support, (Dkt. 19), is **GRANTED**.

Accordingly, Plaintiff's Amended Complaint, (Dkt. 14), is **DISMISSED WITH PREJUDICE**. This case is **CLOSED**.

**SIGNED** on December 5, 2017.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE